UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00154-MOC

| | |
|---|---|
| **JAMAR SERON RANDALL,** ) | |
| ) | |
| Petitioner, ) | |
| ) | MEMORANDUM OF DECISION |
| ) | and |
| Vs. ) | ORDER |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

Petitioner, Jamar Seron Randall, filed a 28 U.S.C. § 2255 (2012) motion, contending that his trial counsel was ineffective in advising him with regard to two plea offers and that, based on that faulty advice, he rejected the first plea offer and accepted the second, less-favorable plea offer. For the reasons that follow, the court grants petitioner's motion.

I.

Petitioner appealed this court's initial denial of such motion, and the Fourth Circuit Court of Appeals reversed such denial, finding that <u>Lafler v. Cooper</u>, 132 S. Ct. 1376 (2012), and <u>Missouri v. Frye</u>, 132 S. Ct. 1399 (2012), were applicable to petitioner's motion as such were decided before this court's Judgment became final, which did not occur until the appellate court denied petitioner's direct appeal and 90 days passed.[1]  Upon remand, this court appointed petitioner counsel and on August 14, 2014, conducted an evidentiary hearing at which petitioner, his mother Ms. Cheryl Randall, and previous counsel Cory A. Williams testified. Oral arguments were heard and the motion was taken under advisement.

---

[1] Immediately prior to sentencing in 2011, the court conducted an evidentiary hearing on petitioner's pre-sentencing claim of ineffective assistance of trial counsel under the then-applicable standard announced in <u>United States v. Lemaster</u>, 403 F.3d 216, 221-22 (4th Cir. 2005). <u>Lemaster</u> held that absent compelling evidence to the contrary, "truth of sworn statements made during a Rule 11 colloquy is conclusively established." <u>Id.</u>

1

At the beginning of the hearing, the court made a Rule 8 inquiry concerning the proposed witnesses of each side and whether either side had any objection to those witnesses testifying. Rules Gov. § 2255 Proceedings 8(d). No objections were raised under Rule 8(d) or Rule 8(c).

II.

After petitioner had been convicted in state court of possession of a firearm by a felon and had received a probationary sentence, the United States Attorney for the Western District of North Carolina secured a waiver from the Attorney General of the United States under the Department of Justice's *Petite Policy* and thereafter sought an indictment against petitioner under 18 U.S.C. §922(g). The grand jury, sitting in Charlotte, charged petitioner with possession of a firearm by a convicted felon, in violation 18 U.S.C. § 922(g) (2012).

After his arrest, petitioner, with the assistance of his mother Ms. Cheryl Randall, retained the services of Cory A. Williams, a partner in the Charlotte firm of *Cloud, Navarro & Williams, PLLC*, through a commercial lawyer-referral service. Review of the court records reveals that since being licensed in 2005, Mr. Williams has represented seven other defendants in criminal matters in this court.[2] He testified that he attended United States Sentencing Guidelines training in 2007 at a seminar sponsored by the court. Mr. Williams stated that he no longer practices in federal court.

Mr. Williams first appeared on October 6, 2010, at petitioner's initial appearance. United States v. Randall, 3:10cr174 (W.D.N.C.) (#2, 1st minute entry) ("Randall"). On October 12, 2010, the magistrate judge entered a Scheduling Order (#3) placing petitioner's criminal case on the January 3, 2011, trial docket, and entering a Standard Discovery Order (#4). On October 20, 2010, the government provided counsel for defendant with discovery on a DVD and on November 3, 2010, counsel contacted the AUSA prosecuting the case to request another copy as

---

[2] Information retrieved August 19, 2014, CM/ECF.

the disk was inadvertently destroyed. That same day, the AUSA provided Mr. Williams with a duplicate discovery DVD that day.[3]

On November 27, 2010,[4] the government extended a written plea offer (the "First Plea Agreement"). Govt. Ex. 1. Under the original plea deal, in addition to two levels of reduction in offense level for acceptance of responsibility pursuant to U.S. Sentencing Guidelines Manual § 3E1.1(a) (2010), the government offered that it would recommend to this court that petitioner receive an additional one-level reduction under USSG § 3E1.1(b) for a timely plea. He was informed by the government that if he did not accept the plea deal by December 15, 2010, he would not receive the third level of reduction. Petitioner did not accept this plea offer and lost the opportunity for an additional one-level reduction. Instead, petitioner, through Mr. Williams, filed a Motion to Suppress (#9) on December 1, 2010.

On December 22, 2010, the government extended a second plea offer (the "Second Plea Agreement"), which petitioner ultimately accepted. Govt. Ex. 2. The material terms of the Second Plea Agreement are the same as the First Plea Agreement, except that under the Second Plea Agreement the government would not move for the additional one-level reduction under § 3E1.1(b). Id. at ¶ 6(d). Mr. Williams testified that both he and petitioner signed the second plea agreement during the weekend preceding the January 3, 2011, calendar call and scheduled suppression hearing. Mr. Williams failed to appear at 9:00 a.m. for calendar call and Honorable Frank D. Whitney, United States District Judge, denied his Motion to Continue (#14) the suppression hearing, setting jury selection for the following morning. Mr. Williams testified that he failed to appear in federal court that morning (or deliver the executed plea agreement to the

---

[3] The court contacted respective counsel after the hearing for information concerning the timing of discovery and plea offers.

[4] *Habeas* counsel for petitioner provided the court, at its request, with a copy of the email extending the first plea offer.

AUSA for countersigning) because he was in the state clerk's office retrieving information concerning the stop that was to be the subject of the suppression hearing.[5] Immediately prior to the suppression hearing, the AUSA filed the plea agreement, the suppression hearing was cancelled, and the Motion to Suppress (#9) was eventually termed administratively on March 17, 2011.

On January 12, 2011, Honorable David C. Keesler, United States Magistrate Judge, conducted a Rule 11 proceeding. Randall (#15, minute entry). Nearing the conclusion of that proceeding, Judge Keesler asked petitioner whether he was satisfied with the services of his attorney, to which he answered "no." Id. (Transcript of Plea Hearing (#30)) at 18-19; see also Govt. Ex. 4 at 18-19. In explaining why he was not satisfied with counsel, petitioner stated to Judge Keesler, as follows: "[h]e told me 41 months. I lost a 20 level and I'm willing to be done with that. I mean ...." Id. at 20. After a recess to allow petitioner to discuss his concerns with his counsel, Mr. Williams, after explaining some history of his counseling of petitioner as well as petitioner's concerns with double punishment, announced to the court that petitioner wished to continue with the Rule 11 hearing and explained:

> And I think he was just -- he wants that extra point. And I advised him then that if he didn't take it by the 15th that he lost that. And I advised him to also go back and look at the acceptance of responsibility statute from the Sentencing Guidelines that I provided him. I showed him another copy today. And he wants to go forward.

Id. at 23. At no point, however, did Mr. Williams, the government, or Judge Keesler thereafter either inquire concerning petitioner's statement that "[h]e told me 41 months" or advise petitioner that any sentencing estimate he may have received from his attorney was only an estimate.

---

[5] Counsel did not explain why, with a signed plea agreement in hand, he believed the suppression hearing would still be held and why, instead, he did not bring the signed plea to federal court that morning. Review of the transaction receipt on ECF reveals that the plea agreement was filed at 1:12 p.m. on January 3, 2011, by the AUSA.

On April 28, 2011, petitioner filed a pro se Motion to Withdraw Plea. Randall (#21), which Honorable David S. Cayer, United States Magistrate Judge, denied by Text Order finding that "[t]he Local Rules of court do not allow pro se motions by a party who is represented by counsel." Text Order (May 10, 2011). The magistrate judge did, however, allow petitioner's counseled Motion to Appoint Counsel, id. (#22), and newly appointed counsel filed a Motion to Withdraw Plea (#24). Judge Cayer considered the motion and the government's Response and denied the Motion to Withdraw Plea. Memorandum and Order (#31). In relevant part, petitioner argued that

> he received erroneous information concerning applicable guideline sentencing range; that he was not advised that a guilty plea waived all non-jurisdictional defects including claims of constitutional violations occurring before the plea and that further, there are fair and just reasons for the guilty plea to be vacated.

Motion to Withdraw Plea (#24).

The Initial Presentence Investigation Report was filed July 18, 2011, and included a projection that, based on a total offense level of 26 and a criminal history category of IV, the guideline range for imprisonment was 92 to 115 months. Initial PSR (#33) at ¶ 49. Petitioner's Objections (#37) to the Initial PSR did not result in any change to the Final PSR (#38).

On November 22, 2011, the court conducted a sentencing hearing and sentenced petitioner at the bottom of the guidelines range to 92-months imprisonment. Randall, Judgment (#53). Petitioner appealed, challenging, among other issues, the validity of his guilty plea and this court's denial of his Motion to Withdraw his guilty plea. The Court of Appeals for the Fourth Circuit affirmed this court on those issues on September 12, 2012, and dismissed the remainder of petitioner's appeal as barred by the waiver-of-appellate rights provision in the plea agreement. See United States v. Randall, 478 F. App'x 5 (4th Cir. 2012) (No. 11-5160).

III.

While petitioner contends that he received ineffective assistance of counsel in the context of both plea offers, the court finds the assistance petitioner received as to the first plea offer, the declination of which resulted in loss of the third point for acceptance of responsibility, was ineffective under Lafler and Frye.

As to the first plea offer, petitioner contends that his Sixth Amendment Right to Counsel was denied due to the ineffective assistance of Mr. Williams in advising him as to the plea. Petitioner argues that trial counsel advised him to reject the first plea offer because he believed they would prevail on a motion to suppress as the officer lacked probable cause to search petitioner's car and that the federal indictment would be dismissed on double jeopardy grounds. Second, petitioner contends that his decision to reject the first plea offer was also based on counsel's faulty guidelines advice. These sub-contentions will be discussed *seriatim*.

A.

At the hearing, Mr. Williams presented credible testimony that he never advised petitioner that he would prevail on the Motion to Suppress, Randall (#9) (filed December 1, 2010), or that he ever advised petitioner that he had a viable double jeopardy claim. Contrary to petitioner's recollection, Mr. Williams testified that he advised petitioner that the choice was his whether to take the plea, that the only way petitioner *could* prevail at trial was *if* they won the motion to suppress, that he never said he was "confident" about the outcome of the Motion to Suppress, and that he advised petitioner that there was no double jeopardy issue.

The court found compelling Mr. Williams testimony that he "did not know everything," that when asked by his client whether the federal charge was barred by double jeopardy he did research on the issue, that he recalled that such research led him to the concept of "separate sovereignty," and that he provided those cases to his client in support of his advice that there was

no double jeopardy issue. He also testified that he discussed the double jeopardy issue with colleagues in the Bar who confirmed his legal conclusion. Further, his testimony concerning the Motion to Suppress was also supported in timing inasmuch as it was not made until after the first plea offer was received.

The court cannot find that counsel provided any misadvice in his counseling of petitioner as to the Motion to Suppress or on the double jeopardy issue or the impact of those issues on the first plea offer.

B.

Petitioner next contends that his decision to reject the first plea offer was also based on counsel's faulty guidelines advice. At the hearing, Mr. Williams admitted that he had provided petitioner with an inaccurate guidelines projection of 41-51 months because he had not reviewed the discovery, which included NCIC information of a second crime of violence and evidence that the serial number on the weapon found in petitioner's possession had an obliterated serial number. It is undisputed that Mr. Williams received the government's discovery on October 20, 2010, and received the plea offer on November 27, 2010. Further, such misadvice is reflected in a December 6, 2010, email to Ms. Randall, which occurred nine days after the first plea offer. While defendant had until December 15, 2010, to accept that plea, there was no evidence that Mr. Williams corrected his guidelines advice by that date.

Without doubt, a proper guidelines calculation would have included the obliterated serial number in the offense conduct and inclusion of the second crime of violence in both the offense conduct and criminal history category. Clearly, at the time he advised petitioner on the first plea offer, counsel was under the impression that petitioner was in criminal history category III, and that his offense conduct would come to 20 (with three points off for timely acceptance of

7

responsibility), resulting in an advisory guidelines range of 41-51 months. This appears to have been based solely on review of the indictment and information petitioner had provided to counsel. Thus, under that calculation, if petitioner did not take the plea and went to trial and lost, he would only be looking at a range of 57-71 months. With those being the stakes on the table, it appears that petitioner was willing to gamble and rejected the first plea offer, especially since he had a *chance* of excluding the firearm based on an allegedly unlawful search.

Thus, the question squarely presented to the court is whether a defendant, who rejects a plea offer based not only on faulty guidelines advice but on advice that is not even based on a review of discovery which the attorney had in hand for more than a month, has received ineffective assistance of counsel at a critical juncture in the proceedings.

In making such determination, the court has closely reviewed <u>Lafler</u>, <u>Frye</u>, and <u>Strickland</u>. Under current case law, the fact that petitioner gave sworn answers to the magistrate judge in the plea proceedings is of no moment if the plea was the product of ineffective assistance of counsel. In <u>Frye</u>, the Supreme Court recognized that criminal defendants have the right to "effective counsel during plea negotiations." <u>Frye</u>, 132 S. Ct. at 1407-08. In <u>Lafler</u>, the Court held that incorrect legal advice which led a defendant to reject a plea offer amounts to ineffective assistance of counsel. Lafler, 132 S.Ct. at 1390. Without doubt, Mr. Williams provided petitioner with incorrect legal advice in conjunction with the first plea offer when he advised him that he was only facing 41-51months in prison if he accepted the plea, which meant that he would be looking at 57-71 months if he went to trial and was convicted. Had counsel opened the discovery file before counseling petitioner as to the first plea offer, he would have likely discovered the obliterated serial number and the evidence of two prior crimes of violence. With that information in hand, competent counsel would have calculated that

petitioner was facing 84-105 months under the first plea offer and 110-120[6] if he rejected the plea and went to trial. When viewed from the bottom end of range, petitioner's decision to forego the first plea appears to have been based on a potential exposure of 16 months, when in reality such exposure was 26 months. Thus, the stakes on the table were much higher than petitioner knew when he rejected the first plea offer based on the advice of counsel.

To determine whether such misadvice amounts to ineffective assistance of counsel in the plea bargaining process, the court must apply the two-pronged test under Strickland v. Washington, 466 U.S. 687 (1984). See Lafler, 132 S.Ct. at 1384. To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by such constitutionally deficient representation. Strickland, 466 U.S. at 687-91.

In order to satisfy the performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id., at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id., at 694. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citation omitted). If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Id., at 1290, citing Strickland, 466 U.S. at 697.

While it is certainly within the wide realm of competent representation for attorneys to make *informed* mistakes in projecting guidelines ranges for a client, projecting guideline ranges

---

[6] The actual range is 110-137 months, but would have been capped by the statutory maximum of 10 years.

without first considering the discovery materials falls well outside what courts consider to be competent representation. Failure to review discovery before advising a client as to a plea offer falls well outside the "prevailing professional norms." Williams v. Washington, 59 F.3d 673, 680–81 (7th Cir.1995) (failure to review discovery materials, failure to prepare for trial). Indeed, the American Bar Association standards specifically advise defense attorneys that

> [u]nder no circumstances should a lawyer recommend to a defendant acceptance of a plea unless a full investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.

ABA Standards for Criminal Justice 4–6.1(b). As the Court in Frye recently advised, codified standards of professional practice, such as the ABA Standards, provide guidance in determining the standard for an attorney's performance. Frye, 132 S.Ct. at 1408. While Mr. Williams testified that he left the decision to accept or reject the plea to the petitioner, petitioner's decision was based on guidelines advice that was not just wrong, but was the result of a complete abdication of an attorney's responsibility to review discovery prior to counseling a defendant concerning a plea offer. Thus, by Mr. Williams own admission, the ADBA standard was not met. The court finds that the first Strickland prong is met.

In considering the second prong of the analysis, prejudice, the court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993)). Here, the result was fundamentally unfair because petitioner, presented with advice as to guidelines that was not even based on a review of discovery, was unable to make a knowing and voluntary decision concerning the merits of the first plea offer.

Had he been advised by an attorney who had opened the discovery, petitioner would have likely been advised that he was facing a greater sentence than he initially believed, but that the plea would likely have taken in excess of two years off that potential sentence rather than slightly more than one year off the incorrectly perceived potential sentence.

Finally, the court has reviewed the evidentiary material presented in light of the standard set forth in Lafler, which provides that a court must consider whether there is a

> reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S.Ct. at 1385. Clearly, all the Lafler factors weigh in petitioner's favor. The only factor with any uncertainty is whether defendant would have accepted the plea, but as to that factor there is a "reasonable probability" that had petitioner been properly advised, he would have accepted the first plea deal because it provided him with substantially less exposure, albeit substantially more time than he wanted, thought he deserved, or had been advised he faced if convicted. Having determined that petitioner received ineffective assistance of counsel in considering the first plea offer, the court need not consider petitioner's acceptance of the second plea offer as it was facially less beneficial to petitioner than the first.

***

In finding that counsel provided ineffective assistance to petitioner, the court specifically limits its holding to the facts of this case, to wit, where an attorney provides grossly inaccurate guidelines advice based on failure to review open-file discovery prior to advising a defendant as to the merits of a plea offer. Such decision is not applicable to situations where an attorney provides a client with a guidelines estimate based on a full investigation and study of the case

that later turns out to be erroneous based on newly discovered or unanticipated evidence or information.

IV.

Finally, the court has considered the appropriate remedy. It is certain that the court cannot provide petitioner with the remedy he wants, which, as he expressed at the hearing, is to go home immediately or for the court to impose a sentence of 41 months as counsel incorrectly advised him he could receive. Equally, the remedy is not necessarily the one the government confronted petitioner with at the hearing, which would be striking the Judgment and placing petitioner back on the trial calendar with the possibility of receiving a sentence of 110-120 months if he is convicted. While it is possible that such remedy could ultimately be employed, case law provides a more measured response.

In Lafler, the Court specifically held that the correct remedy where ineffective assistance of counsel resulted in the rejection of a more favorable plea was to order "the prosecution to reoffer the plea agreement." Id. at 1391. The court will, therefore, direct the government to reoffer the First Plea Agreement. In the event petitioner accepts that offer, the court will then vacate the Judgment, direct Pretrial Services to submit a revised PSR (and therein take into consideration petitioner's accomplishments and other events during incarceration), and resentence petitioner. In the event petitioner declines that offer, the court will then determine how to exercise its discretion in a measured manner, taking into account "all the circumstances of the case." Id.

**ORDER**

**IT IS, THEREFORE, ORDERED** that petitioner's 28 U.S.C. § 2255 (2012) motion (#1) is **GRANTED**, and the government is **DIRECTED** to reoffer the First Plea Agreement by tendering such agreement to present counsel of record in <u>United States v. Randall</u>, 3:10cr174. In the event petitioner accepts that offer, the court will then vacate the Judgment and resentence petitioner in the criminal action. In the event petitioner declines that offer, the court will then determine how to exercise its discretion taking into account "all the circumstances of the case."

Signed: August 29, 2014

Max O. Cogburn Jr.
United States District Judge